**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **ROGER DREW MOORE,** ) | **CASE NO. 5:07CR275** |
| ) | |
| **Petitioner,** ) | |
| ) | **JUDGE PETER C. ECONOMUS** |
| v. ) | |
| ) | |
| **UNITED STATES OF AMERICA,** ) | **ORDER** |
| ) | |
| **Respondent.** ) | |
| ) | |

The instant matter is before the Court on Petitioner Roger Moore's ("Moore") Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255. (Dkt. # 45; 46; 52; 54.) In said Motion, Moore claims to have received (1) ineffective assistance of counsel and (2) a sentence that violates the Constitution and laws of the United States. (Dkt. # 54.) For the reasons that follow, Moore's Motion to Vacate is denied.

**I. PROCEDURAL HISTORY**

Moore was arrested and arraigned before Magistrate Judge James S. Gallas on April 16, 2007. (Dkt. # 61, at 1.) Magistrate Judge Gallas ordered Moore detained. (Dkt. # 61, at 1.) On May 8, 2007, Moore was indicted with one count of knowingly traveling from Massachusetts to Ohio for the purpose of engaging in illicit sexual conduct with a fourteen-year-old girl. (Dkt. # 61, at 1.)

On June 16, 2007, after an initial plea of not guilty, Moore pled guilty to the indictment. (Dkt. # 61, at 2.) No plea agreement was executed. (Dkt. # 54-2, at 5.) On

1

August 20, 2007, Moore met with a probation officer to produce his presentencing report ("PSR"). (Dkt. # 54-2, at 5.) Moore's retained counsel, Fredrick Pitinii ("Pitinii"), did not attend. (Dkt. # 54-2, at 5.) The record shows no request of Moore's for Pitinii's presence at this meeting. (Dkt. # 61, at 7.) Shortly after the PSR interview, Pitinii withdrew as counsel and the Court appointed Neal Atway ("Atway") as Moore's attorney. (Dkt. # 54-2, at 5.)

The Court sentenced Moore on January 25, 2008, to 55 months imprisonment and supervised release for 8 years with standard and special conditions; in addition, Moore was ordered to pay a special assessment of $100.00, and a fine of $5,000.00. (Dkt. # 61, at 2; Dkt. # 54-2, at 5.)

Moore did not file an appeal to his sentence; however, on October 22, 2008, Moore filed an Emergency Motion to Waive Fees, Produce Transcripts, Appoint Counsel, and Order Equitable Tolling. (Dkt. # 45.) A month later, Moore filed a Motion to Re-Characterize his Emergency Motion as a Motion to Vacate under 28 U.S.C. § 2255. (Dkt. # 46.) On December 5, 2008, the Court granted Moore's Motion to Re-Characterize, but denied Moore's Motion for Free Sentencing Transcripts and Court-Appointed Counsel. (Dkt. # 48.) The Court gave Moore until March 25, 2009, to amend his § 2255 petition. (Dkt. # 48.) Subsequently, Moore timely filed two amendments to his Re-Characterized § 2255 petition. (Dkt. # 52; Dkt. # 54.)

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal district court may grant relief to a prisoner in custody under a sentence imposed by that court "upon the ground that the sentence was

imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack . . . ." 28 U.S.C. § 2255(a) (2006). To prevail under § 2255, a petitioner "must show a 'fundamental defect' in the proceedings which necessarily results in a complete miscarriage of justice or an egregious error violative of due process." Gall v. United States, 21 F.3d 107, 109 (6th Cir. 1994).

Furthermore, § 2255 requires a district court to "grant a prompt hearing" when such a motion is filed, and to "determine the issues and make findings of fact and conclusions of law with respect thereto" unless "the motion and the files and the records of the case conclusively show that the prisoner is entitled to no relief." Green v. United States, 445 F.2d 847, 848 (6th Cir. 1971); Bryan v. United States, 721 F.2d 572, 577 (6th Cir. 1983).

### III.   LAW AND ANALYSIS

Moore claims that he received (1) ineffective assistance of counsel and (2) a sentence that violates the Constitution and laws of the United States.

#### A. Ineffective Assistance of Counsel

The standard of review for an ineffective-assistance-of-counsel claim is governed by Strickland v. Washington, 466 U.S. 668 (1984), which requires a two-prong analysis.

##### 1. Two-prong Strickland Standard

In seeking to demonstrate that Atway provided Moore with ineffective assistance of counsel, Moore bears the burden of satisfying the two-prong standard set forth in

3

Strickland v. Washington, 466 U.S. 668 (1984). The Supreme Court's two-prong ineffective-assistance-of-counsel standard, requires a defendant to "show [1] that counsel's performance was deficient . . . [and] [2] that the deficient performance prejudiced the defense." Id. at 687.

### *a*) Deficient

First, Moore must show that Atway's representation was deficient—i.e., that Atway's representation "fell below an objective standard of reasonableness." Id. at 688 ("The proper measure of attorney performance remains simply reasonableness under prevailing professional norms."). The Court must be "highly deferential" in scrutinizing Atway's performance. Id. at 689. There is a strong presumption that Atway "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690.

### *b*) Prejudicial

Second, Moore must show that Atway's errors prejudiced his defense. Even if Atway's performance is shown to be deficient, "any deficiencies . . . must be prejudicial to the defense in order to constitute ineffective assistance under the constitution." Id. at 692. Moore must "affirmatively prove prejudice" by showing that the unreasonable errors "actually had an adverse effect on the defense." Id. at 693. In other words, Moore "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In Strickland, the Supreme Court explained, "a court need not determine whether counsel's performance was deficient before examining" whether the alleged deficiencies were prejudicial. Strickland, 466 U.S. 668, 697. In other words, "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

### 2. Ground I(i): Atway's Failure to File an Appeal

Moore alleges that Atway's failure to file an appeal following his sentence constitutes ineffective assistance of counsel. An attorney is not required to file an appeal for a client after an adverse ruling, but an attorney's failure to file a client requested appeal is per se ineffective assistance of counsel. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000); Regalado v. United States, 334 F.3d 520, 525 (6th Cir. 2003). If an attorney has counseled his client and the client accedes to counsel's advice not to appeal, counsel's performance is not deficient. Regalado, 334 F.3d 520, 525-26. "Consultation occurs when the attorney 'advis[es] the defendant about the advantages and disadvantages of taking an appeal, and mak[es] a reasonable effort to discover the defendant's wishes.'" Regalado, 334 F.3d 520, 525 (citing Roe, 528 U.S. 470, 478).

Moore claims that he demanded an appeal and that Atway failed to follow these instructions. (Dkt. # 65, at 2.) Moore, however, readily admits that after Atway informed him that he had no colorable claims and that Assistant U.S. Attorney ("AUSA") Sullivan would be reluctant to return his property if an appeal were filed, he "reluctantly agreed with attorney Atway's advice not file the Notice of Appeal." (Dkt. # 65, at 2.) According to Moore, his possessions "were critically important to [his] vocation and

5

future income after release." (Dkt. # 65, at 2.) Acceding to Atway's advice not to file an appeal indicates Moore's belief that the return of his items was more important to him than his right of appeal. Notwithstanding Moore's subsequent change of heart, the decision not to file an appeal was reasonable and, therefore, not deficient.

Moore's petition for habeas corpus on Ground I(i) is **DENIED**.

### 3. Ground I(ii): The Role of Coercion or Government Interference in Moore's Decision to Give Up His Right to Appeal

Moore claims that he was either coerced by Atway to give up his right of appeal or that the "government interfered through overt or covert influence through attorney Atway." (Dkt. # 66-2, at 9.) "The burden on the petitioner in a *habeas* case for establishing an entitlement to an evidentiary hearing is relatively light." Turner v. United States, 183 F.3d 474, 477 (6th Cir. 1999). However, "[b]efore a hearing on a habeas corpus petition must be held, 'the petition must be accompanied by a detailed and specific affidavit which shows the petitioner has actual proof of the allegations going beyond mere unsupported assertions.'" Legette-Bey v. U.S., No. 1:06CV01704, 2008 WL 1820647, at *2 (N.D. Ohio Apr. 21, 2008) (citing Barry v. United States*,* 528 F.2d 1094, 1101 (7th Cir. 1976)). Furthermore, "[a] petition for habeas corpus based upon speculation and conjecture is 'patently insufficient.'" Legette-Bey, 2008 WL 1820647, at *2 (citing Barry, 528 F.2d 1094, 1102); Accord United States v. Brooks*,* 677 F.2d 907, 911-12 (D.C. Cir. 1982); United States v. Ortega-Velasquez*,* 465 F.2d 419 (5th Cir. 1972). "No hearing is required if the petitioner's allegations cannot be accepted as true because they are . . . mere conclusions rather than statements of fact." Valentine v.

United States, 488 F.3d 325, 333 (6th Cir. 2007) (quoting Arredondo v. United States, 178 F.3d 778, 782 (6th Cir. 1999) (internal quotations omitted).

Moore's allegations of coercion and government interference are mere conclusions not based in fact. While both AUSA Sullivan and Moore requested affidavits from Atway pertaining to the consultation after sentencing in which Moore passed on his right of appeal, Atway failed to respond. (Dkt. # 66-2, at 9.) Without Atway's affidavit, Moore's affidavit is the only record of this meeting. Even viewing the affidavit in a light most favorable to Moore, the affidavit merely presents the account of an attorney competently counseling his client. (Dkt. # 65.) Moore presents no facts to support a coercion claim. Thus, Moore's conclusion alone, that an act of coercion transpired, does not warrant an evidentiary hearing. Valentine, 488 F.3d 325, 333.

Even if Moore's affidavit were enough to warrant an evidentiary hearing, Moore has failed to present sufficient evidence to overcome the strong presumption that Atway "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. 668, 690.

Moore's petition for habeas corpus on Ground I(ii) is **DENIED**.

### 4. Ground I (iii)(A): Counsel's Failure To Be Present At Moore's PSR Interview

Moore alleges that Pitinii's failure to appear at Moore's PSR interview constitutes ineffective assistance of counsel. "The right to counsel only attaches during a 'critical stage of the prosecution.'" United States v. Tisdale, 952 F.2d 934, 939 (6th Cir. 1992) (quoting Kirby v. Illinois, 406 U.S. 682, 690 (1972)). "Although the Sentencing

7

Guidelines have increased the importance of the probation officer's report, in non-capital cases such as this one the presentence interview does not represent a critical stage of the prosecution." Tisdale, 952 F.2d 934, 940. Therefore, the Sixth Amendment does not guarantee assistance at presentence interviews; however, probation officers are to honor a defendant's request for assistance of counsel. Id. Neither Moore, nor the record indicate an ignored request for counsel at the presentencing interview. Thus, Pitinii's absence from the presentencing interview was not deficient.

Moore's petition for habeas corpus on Ground I(iii)(A) is **DENIED**.

### 5. Ground I(iii)(B): Atway's Failure To Follow Up On Moore's Requested Objections to the PSR

Moore alleges that Atway's failure to object to the inclusion of unverified statements made by Moore on the internet to an undercover federal agent in both the PSR and sentencing proceeding constitutes ineffective assistance of counsel. Moore claims that he asked Atway to object, and that counsel's failure to do so led to an increased sentence. (Dkt. # 54-2, at 34-35; Dkt. # 66-2, at 17.) For the purposes of this Motion, the Court assumes Atway's decision not to follow up on Moore's requested objection was deficient, and the Court looks to see if Moore was prejudiced from this deficiency.

Statutorily, Moore faced a potential of 30 years in prison, a term of supervised release no less than 5 years, up to life, a fine of up to $250,000 and a special assessment of $100. 18 U.S.C. §§ 2423(b), 3583(k), 37571, 3013. The advisory guideline range of imprisonment was 46 to 57 months. (PSR ¶ 74.) In regards to supervised release, the PSR stated, "The defendant's offense also warrants a term of supervised release beyond

8

five years so he can be monitored and held accountable for his activity well into his retirement years. It is hoped 'sneaking around' with the intent to participate in illicit sexual activity with children is never an option for him again." (PSR 18.) Moore was sentenced to 55 months imprisonment and 8 years supervised release with special conditions. (Sent. Tr. 19-20.) Moore's sentence is within both the statutory and advisory guidelines.

For the purposes of sentencing, the Court did not rely upon the alleged conduct claimed in Moore's contested conversations; rather, the Court relied upon the gravity of the offense. Moore actively sought out a minor with whom to engage in sexual activities. Moore traveled across state lines to meet this minor and engage in such acts. Moore was thwarted from completing his plan only because the minor Moore thought he was meeting was an undercover federal agent. At sentencing, the Court stated, "A short sentence would not be a deterrent. It goes without saying that the public needs protection from sexual predators who target minors, children who are prey to the charms of sexual deviants," and, "it's more likely that [Moore] will recidivate without long term treatment." (Sent. Tr. 17-18.) The Court reasonably found the weight of Moore's offense deserving of a sentence at the higher end of the sentencing guidelines.

Moore claims that the mitigating factors presented to the Court at sentencing would have warranted a lighter sentence if it were not for the inclusion of the contested conversations in the PSR and their reading at sentencing. As discussed below, the Court considered Moore's mitigating factors, but ultimately found them unpersuasive, not

9

because of the contested conversations, rather due to their lack of relevance to Moore's offense. (Sent. Tr. 11; see infra pp. 17-18.)

The Court finds that Atway's failure to object to the inclusion of the internet conversations in the PSR and sentencing hearing was not prejudicial. Therefore, Moore's petition for habeas corpus on Ground I(iii) is **DENIED**.

### 6. Ground I(iv): Atway's Failure to Argue for "Safety Valve" Eligibility

Moore initially claimed that Atway's assistance was ineffective due to Atway's failure to argue for Moore's "Safety Valve" eligibility, which allegedly led to Moore receiving a greater sentence then necessary. (Dkt. # 54-2, at 19.) The Government's response correctly points out that Moore did not qualify for the "Safety Valve" provision (Dkt. # 61, at 10) and that counsel is not required to raise meritless claims to avoid a charge of ineffective assistance of counsel. Ludwig v. United States, 162 F.3d 456, 459. Moore has subsequently withdrawn this claim. (Dkt. # 66-2, at 11.)

### B. Constitutionality of Sentence

Moore claims (1) that his terms of supervised release are unconstitutional, and (2) that it was an abuse of the Court's discretion to consider prejudicial conversations at sentencing.

### 1. Ground II, III(i), IV: Constitutionality of Moore's Special Conditions of Supervised Release

Moore claims that the terms of his supervised release are unconstitutional, because (1) they are without statutory grounding, and (2) they deprive both him and his family of liberty without due process. (Dkt. # 54-2, at 21, 23, 41.) These claims are without merit.

The Government initially asserts that Moore defaulted on these claims, because he did not object to the Court's sentence at the close of the sentencing hearing. (Dkt. # 61, at 11.) The Court, however, did not explicitly state during the sentencing hearing the special conditions to which Moore objects; therefore, Moore did not default on these claims.

### *a*) Statutory Grounding for Special Conditions of Supervised Release

Moore asserts that the Court (1) lacked statutory authority to impose the special conditions of supervised release, and (2) violated both 18 U.S.C. § 3553(c) and (3) Fed. R. Crim. P. 32(i)(1)(B) when imposing the special conditions.

### (1) Statutory Authority

A court may impose special conditions of supervised release if deemed appropriate. United States v. Kingsley, 241 F.3d 828, 836 (6th Cir. 2001) (citing 18 U.S.C. § 3553(c)). The appropriateness of special conditions is determined by whether they are "reasonably related to the dual goals of probation,"—i.e., rehabilitation and protection of the public—and whether they involve "no greater deprivation of liberty than is reasonably necessary to achieve these goals." United States v. Ritter, 118 F.3d 502, 504 (6th Cir. 1997).

Special conditions on supervised release may also "implicate fundamental rights such as . . . freedom of association . . . if primarily designed to meet the ends of rehabilitation and protection of the public." Ritter, 118 F.3d 502, 504 (citing United States v. Peete, 919 F.2d 1168, 1181 (6th Cir. 1990)); 18 U.S.C. §§ 3583(d), 3563(b). 18

11

U.S.C. § 3563(b) explicitly allows for the conditions challenged by Moore. Conditions may require a defendant to:

> **(5)** refrain, in the case of an individual, from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree or under stated circumstances;
>
> **(6)** refrain from frequenting specified kinds of places or from associating unnecessarily with specified persons . . . .

Moore pled guilty to crossing state lines with the intent to engage in sexual acts with a fourteen-year-old girl. In the sentencing hearing, the Court made clear that it is "extremely concerned for the safety of other under-aged children similarly situated" to the one Moore attempted to encounter. (Sent. Tr. 17-18.) As the Court stated, "it goes without saying that the public needs protection from sexual predators that target minors, children who are prey to the charms of sexual deviants." (Sent. Tr. 18.) The PSR, which Moore and Atway reviewed (Sent. Tr. 2), explained that the terms of Moore's supervised release were intended to protect the public from his further participation in sexual acts with minors. (PSR 18.) It is the Court's duty to place restrictions upon Moore's freedom to associate in locations frequented by children in order to protect the public and further Moore's rehabilitation. Therefore, the Court has discretion, granted by statute, to impose special conditions of supervised release upon Moore.

### (2) Violation of 18 U.S.C. § 3553(c)

Moore claims that the Court violated 18 U.S.C. § 3553(c) by failing to state in the sentencing hearing its rationalization for imposing special conditions of supervised

release found in the Judgment Order. (Dkt. # 54-2, at 22; Dkt. # 39.) The failure of a court to explain its reasons for imposing special conditions on supervised release amount to harmless error if the court's reasons are clear from the record. United States v. Brogdon, 503 F.3d 555, 564 (6th Cir. 2007) (quoting United States v. Kingsley, 241 F.3d 828, 836 (6th Cir. 2001)). As explained above, the Court found the gravity of Moore's offense worthy of a significant sentence in order to protect the public, specifically minors. The reasons, therefore, for the special conditions not expressed at sentencing were clear from the record. Accordingly, the Court's error was harmless. Brogdon, 503 F.3d 555, 564.

### (3) Violation of Fed. R. Crim. P. 32(i)(1)(B)

Both Moore and Atway reviewed the PSR prior to the sentencing hearing (Sent. Tr. 2); however, Moore claims that the Court violated Fed. R. Crim. P. 32(i)(1)(B) by imposing special conditions upon his supervised release, which were not laid out in the PSR. (Dkt. # 54-2, at 22.) Fed. R. Crim. P. 32(i)(1)(B) requires a court to provide both defendant and counsel with a written summary of any information excluded from the PSR upon which the court will rely at sentencing. Moore presents no evidence that the Court relied upon information excluded from the PSR beyond the fact that the special conditions imposed were not mentioned in the PSR. As previously stated, the Court found the nature of Moore's offense worthy of a significant sentence. The PSR recommended a term of supervised release of eight years. (PSR 16.) While the PSR did not specify all of the special conditions issued by the Court, the PSR did make clear that Moore should be restricted from "'sneaking around' with the intent to participate in illicit

13

sexual activity with children." (PSR 18.) After hearing both Moore's and the Government's arguments, the Court announced its sentence and ultimately agreed with the recommendations of the PSR. The Court then, within its discretion, imposed special conditions. Without evidence that the Court relied upon information outside of the PSR, Moore's claim fails.

### *b*) **The Effect of the Special Conditions of Supervised Release on Moore's and His Family's Liberties**

Moore claims in Ground III(i) that the court-imposed special conditions, specifically those restricting him from associating with minors, will deprive his family of liberty without due process of law, namely through Moore's potentially hampered interactions with his son. (Dkt. # 54-2, at 25; Dkt. # 66-2, at 16.)

As a preliminary matter, the Government asserts that this claim is not ripe for adjudication. While "[o]ne does not have to await the consummation of threatened injury to obtain preventive relief," impending injury must be certain for a claim to be ripe. Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 581 (1985). A claim is not ripe if it involves "contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. at 580-581. The Government argues that the alleged violation of rights has not yet occurred, because Moore's "argument is premised upon a hypothetical and not a factual statement." (Dkt. # 61, at 14.) The Court agrees.

Moore claims that his parental freedoms will be infringed if he is required to acquire written permission from his probation officer before entering an area frequented by minors. Moore alleges that, because his visitations are on weekends, he would be

unable to reach his probation officer for written permission to attend his son's events should they suddenly change venues. This claim, however, involves "contingent future events that may not occur as anticipated, or may not occur at all." Thomas, 473 U.S. 568, 580-581. Therefore, Moore's claim is not ripe for adjudication.

Even if Moore's claim were ripe, the conditions placed upon Moore's supervised release are justified and within the Court's discretion to impose. Moore is not completely barred from child-oriented activities with his son. Instead, he must receive "the express written approval of [his] probation officer," prior to his presence in an area frequented by minors. (Dkt. # 39, at 4.) While burdensome upon Moore's relationship with his son, as previously explained, the special conditions of Moore's supervised release are reasonably related to the goals of rehabilitation and protection of the public. See supra pp. 11-13, United States v. Ritter, 118 F.3d 502, 504 (6th Cir. 1997). Moreover, Moore's court-imposed special conditions do not impose a greater deprivation of liberty than is "reasonably necessary to achieve these goals." Id.

Fundamental rights such as Freedom of Speech and Association may be implicated in special conditions upon supervised release "if primarily designed to meet the ends of rehabilitation and protection of the public." Id. (citing United States v. Peete, 919 F.2d 1168, 1181(6th Cir. 1990)). It follows that parental freedoms may also be implicated in such conditions. Therefore, Moore's special conditions of supervised release are not unreasonably burdensome upon him or his family's liberties.

For the foregoing reasons, Moore's petition for habeas corpus on Grounds II, III(i) and IV is **DENIED.**

15

## 2. Ground III(ii) The Court's Abuse of Discretion in Relying Upon Contested Conversations at Sentencing

Moore asserts that the Court abused its discretion by considering claims by Moore, made in internet conversations, that he had previously engaged in illicit sexual conduct with one or more underage females. During the sentencing hearing, the prosecutor asserted these claims as fact. Moore argues that, despite his internet claims to the contrary, he never previously engaged in such conduct. Moore further argues that the Court's consideration of these unverified claims prejudiced him by leading to an excessive term of imprisonment and supervised release. (Dkt. # 54-2, at 29.)

The Government asserts that Moore defaulted on this claim due to Moore's failure to object to the inclusion of the contested conversations in the PSR and sentencing hearing. (Dkt. # 61, at 16.) Defaulted claims may be heard on collateral appeal if petitioner shows "cause" for his failure to object or raise the claim, and "actual prejudice" as a result of that failure. See United States v. Frady, 456 U.S. 152, 170 (1982).

Concerning the PSR, Moore never denied making the statements he now contests. Moore, however, does contest the assertion that what was stated in those conversations actually occurred. Moore could not know the events stated in his conversations would be claimed to have actually occurred until the end of the sentencing proceeding; therefore, there is cause for his failure to object to the conversations' inclusion in the PSR at the beginning of the sentencing hearing. At the end of the sentencing hearing, however, Moore and Atway knew how both the Court and AUSA Sullivan used the conversations, yet they still did not object. The Court asked, "Are there any objections to the Court's

16

sentence, or any other reason why this sentence should not have been imposed?" Atway, on behalf of Moore responded, "No, your Honor." (Sent. Tr. 23.)

Moore now objects, asserting that the Court abused its discretion in considering those conversations, leading it to dismiss Moore's mitigating factors and increase his sentence. Procedurally, Moore defaulted on this claim, for he cannot show cause for failing to object after the Court announced his sentence. See Frady, 456 U.S. 152, 170.

Even if Moore could establish cause, potentially due to Atway's deficiency as counsel, Moore cannot show prejudice resulting from this failure to object. See supra pp. 8-10; Strickland, 466 U.S. 668, 697. As discussed at length above, the Court neither relied upon the contested conversations when sentencing Moore, nor when it dismissed Moore's mitigating factors. See supra pp. 9-10. The Court found the gravity of Moore's admitted actions alone, worthy of the sentence handed down. See supra pp. 9-10. While Moore presented mitigating factors, the Court reviewed those factors and found them unconvincing:

> I also want to address the statement made by your counsel, Mr. Atway and you've pointed out to the court that while in the military you helped save a person's live.
> But that commendable conduct of about 35 years ago really bears no relationship to the instant offense. And I don't think that should be a reason to reward the defendant with a departure or a variance.
> And the other factors in the affidavit, or unsworn statement provided by the [Petitioner], although the court has the discretion to depart, are not grounds for departure. I don't believe a departure would be warranted.

(Sent. Tr. 11.)

17

The Court did not abuse its discretion or impose an excessive term of imprisonment or supervised release. Instead, it considered "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A). The Court did not rely upon Moore's contested conversations; rather, as shown above, the Court's imposed sentence reflects the seriousness of Moore's actions, promotes respect for the law and provides just punishment for Moore's offense.

Moore's petition for habeas corpus on Ground III(ii) is **DENIED**.

## IV. CONCLUSION

For the forgoing reasons, Moore's Motion to Vacate, Set Aside, or Correct Sentence Pursuant to 28 U.S.C. § 2255 is hereby **DENIED**.

**IT IS SO ORDERED.**

**/s/ Peter C. Economus – August 3, 2009**
**PETER C. ECONOMUS**
**UNITED STATES DISTRICT JUDGE**